**P-SEND**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS PATTON, | ) | Case No. CV 05-1966-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Thomas Patton seeks judicial review of the Commissioner's final decision denying his application for Supplemental Security Income benefits under Title XVI of the Social Security Act. 42 U.S.C. § 1381 *et seq.* For the reasons set forth below, Plaintiff's motion for summary judgement is granted and the action is remanded for an award of benefits.

I.   **Background**

Plaintiff filed his application for Social Security Disability and

Supplemental Security Income on March 4, 2002, with an amended alleged onset date of August 5, 1999. (AR at 57-59).  He alleges disability since August 5, 1999, due to neck and back pain, diabetes, a heart condition and depression.  His application was denied initially and upon reconsideration. (AR at 29, 36).  An administrative hearing was held on December 2, 2003, before Administrative Law Judge ("ALJ") James A. Paisley. (AR at 388).

Plaintiff was born on April 27, 1947, and was fifty-six years old at the time of the administrative hearing. (Administrative Record "AR" at 388).  He has a twelfth grade education. (AR at 57, 393). Plaintiff's past relevant work was as a truck driver and working cement mixer. (AR at 438).  At the hearing, Plaintiff testified that he is the legal guardian of his grandchildren from one daughter, whom he drives to school each morning.  The school is located three blocks away. Plaintiff has another daughter who lives with him and helps him with the children. (AR at 393-95). Plaintiff's wife passed away unexpectedly in 2003. Plaintiff stated that he suffered from depression stemming from this death, but had not undergone any psychological evaluation since August 21, 2000.

Plaintiff testified that he attends school every day for five hours. He is completing a vocational rehabilitation training program in computer repair. (AR at 398). Because of pain, Plaintiff misses 2-3 days of school a month (AR at 421). He takes three breaks per five hour class, one for 20 minutes, one for 45 minutes, and one for 35 minutes. (423). Plaintiff testified that he experiences severe back pain that keeps him from bending down or climbing a ladder or sitting for an extended period of time. (AR at 399).

\\

Plaintiff testified that he was in a serious work-related accident in 2001. The cement truck that he was driving flipped over. He received a workers compensation settlement in 2001. (AR at 403). Plaintiff testified that he has hadd memory and concentration problems since the accident, as well as depression. He forgets appointments.

Plaintiff further testified that he has gained weight because of the medicine he takes for diabetes. Plaintiff stated that he is in pain both day and night. He used to take walks but now cannot make it around the block without stopping because of sharp pain. He takes aspirin for the pain because stronger pain medicine makes him too drowsy and prevents him from being able to drive. (AR at 412, 415). Plaintiff stated that he experiences severe headaches 3-4 times a week. (AR at 433).

A vocational expert, Abbe May, testified that based on a hypothetical posed by the ALJ, Plaintiff could not perform his past relevant work. (AR at 438). However, May identified light unskilled and semi-skilled positions in the national economy that Plaintiff could perform. (AR at 439-444).

The ALJ issued a decision denying Plaintiff's application for benefits on January 28, 2004. (AR at 16.)  In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 5, 1999, and was unable to perform his past relevant work as a cement truck driver and chemical mixer supervisor. The ALJ noted that the allegations made by Plaintiff at the hearing were generally not credible. The ALJ found that Plaintiff suffered from several severe impairments, including degenerative disc disease of the cervical spine, status post cervical surgery, diabetes mellitus controlled with medication, hypertension controlled with medication, and hyperlipidemia

3

controlled with medication, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ held that Plaintiff has the residual functional capacity to perform the physical exertional and non-exertional requirements of work except for sitting, standing and walking for greater than 6 hours in an 8-hour work day, more than minimal bending, and more than occasional stooping and crouching. Jobs the Plaintiff is capable of performing include van driver, hand packer, and cashier/ticket seller. (AR at 24-25).

The Appeals Council denied Plaintiff's request for review on February 18, 2005. (AR at 5-8). Plaintiff commenced this action for judicial review on March 25, 2005. On November 14, 2005, the parties filed a Joint Stipulation of disputed issues. The matter is now ready for decision.

## II.  Plaintiff's Claims

Plaintiff contends that the ALJ erred by: (1) presenting a incomplete and inaccurate hypothetical question to the Vocational Expert; (2) inadequately and improperly developing the record by not pursuing all relevant facts; (3) improperly analyzing Plaintiff's mental impairments at Step Two of the Sequential Evaluation Process under 20 C.F.R. § 1520(a); (4) failing to obtain, inquire about, or identify and resolve conflict between the Dictionary of Occupational Titles and the Vocational Expert testimony, in violation of Social Security Ruling 00-4p; (5) improperly rejecting the findings and opinions of Plaintiff's treating physician; and (6) improperly discrediting the testimony of Plaintiff.

4

**III. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision denying benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

**IV. Discussion**

   **A.   The ALJ's Hypothetical to the Vocational Expert Was Legally Adequate**

Plaintiff asserts that the ALJ's hypothetical posed to the vocational expert was incomplete and did not include all of Plaintiff's exertional and non-exertional impairments.

The ALJ presented the following hypothetical to the vocational expert:

Assume an individual 56 years of age with a 12th grade education, using [exhibits] 9F, 8F, 5F and 1F, able to work at

5

the light level; stand and walk six hours of an eight-hour day; sit six of eight hours of an eight-hour day, pushing and pulling would be unlimited; minimal limitations of bending, stooping and crouching. There would be no manipulative limits, no visual or communication limits, no environmental or non-exertional limits. Could such a person perform any of the past relevant work? . . . Would there be other work that such a person could perform?" (AR at 438).

The vocational expert responded negatively to the first question and affirmatively to the second question, identifying light unskilled and semi-skilled positions in the national economy that Plaintiff could perform. (AR at 439-444).

Petitioner argues that despite citing these specific exhibits as a basis for the hypothetical, the ALJ failed to include all functional restrictions documented in the cited exhibits. For example, Exhibit 1F, the Consultative Report from Dr. Jandial, notes "decreased range of motion in the left shoulder." (AR at 105). Also, in Exhibit 5F, Dr. Pojunas notes that Plaintiff complains of severe neck pain with heavy pushing and pulling, as well as with prolonged neck flexion, extension, or rotation. (AR at 123).  In Exhibit 8F, consultative examiner Dr. Leoni notes that Plaintiff "does have limitation of range of motion of the cervical spine" due to his neck abnormalities. (AR at 308). Finally, in Exhibit 9F, Dr. Lopez notes that Plaintiff has an occasional restriction in climbing and limitations with reaching in all directions, including overhead. (AR at 311-12).

Plaintiff further asserts that the ALJ's hypothetical inappropriately failed to include non-exertional impairments as documented by psychological consultative examiner Dr. Martin, most

significantly the mild mental retardation to borderline intellectual functioning. (AR at 108, 111).  Finally, the Plaintiff complains that the ALJ's hypothetical encompassed no limitations at all relating to Plaintiff's cardiac problems, despite heart palpitations from stress documented by his treating cardiologist, Dr. Garg. (AR at 203, 210, 212, 214, 217). Plaintiff asserts that dizziness is noted by Dr. Garg as well as by Dr. Jandial in his C.E. report. (AR at 208, 210, 105). Consequently, Plaintiff contends that it is reversible error to base the finding that Plaintiff could perform other work on the vocation's experts's invalid testimony.

Under the governing legal standard, "[i]n order for the testimony of a [VE] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted) (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) ("[T]he ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations.").

Here, the ALJ's hypothetical adequately incorporated all of Plaintiff's limitations. Consultative Examiner Dr. Jandial diagnosed Plaintiff with palpitations, bilateral shoulder pain, dizziness, neck pain, hypertension and diabetes, but in his Functional Assessment found that:

"the claimant can be expected to stand or walk about six hours in an eight hour workday with normal breaks. These restrictions are secondary to a reduction of the range of motion.  He can be expected to sit without any restrictions.

1    The claimant can carry and lift 20 pounds occasionally and 10
2    pounds frequently. These restrictions are secondary to
3    decreased range of motion in the left shoulder. He has minimal
4    postural limitation of bending, stooping and crouching. The
5    claimant has no manipulative limitations or visual
6    limitations."

7 (AR at 105).  The ALJ's hypothetical included all of these finding.

8    The omissions that Plaintiff complains about regarding Dr. Pojunas
9 were not medical findings made by him, but simply a recounting of
10 Plaintiff's subjective complaints. With regard to Plaintiff's work
11 restrictions, Dr. Pojunas stated that he has "a disability half-way
12 between a preclusion from heavy work and a limitation to light work."
13 Dr. Pojunas further found that Plaintiff's back conditions preclude him
14 on a prophylactic basis from prolonged standing, sitting or walking. (AR
15 at 123).  The ALJ's hypothetical sufficiently incorporated these
16 restrictions.

17    Finally, consultative examiner Dr. Leoni found that Plaintiff "is
18 limited to lifting 25 pounds frequently and 50 pounds occasionally.
19 [Plaintiff] can stand and walk cumulatively of 6 hours and sit 6 hours.
20 [Plaintiff] has normal conversational hearing and speech. [Plaintiff] is
21 able to travel by car or bus if necessary, perform basic activities and
22 move and handle objects." (AR at 308). The ALJ's hypothetical reflected
23 these findings as well.

24    With regard to the non-exertional limitations, consultative
25 psychological examiner Dr. Martin did report on August 21, 2000, that
26 testing revealed mild mental retardation to borderline intellectual
27 functioning, but stated that, "The results from today's psychological
28 evaluation should be interpreted with some degree of caution.

[Plaintiff's] performance on formal psychometric testing was somewhat below expectations given his pre-morbid level of functioning. It is possible that he is somewhat over emotionally invested in his level of mood and pain disruption." (AR at 109). In his functional assessment, Dr. Martin found that, "[Plaintiff's] ability to relate to others, including co-workers, supervisory personnel and the general public in an appropriate manner is essentially unimpaired . . . [Plaintiff's] ability to understand and follow instructions is unimpaired. His ability to maintain the appropriate level of concentration, pace and persistence necessary to perform a one or two step simple and repetitive task may be mildly disrupted but less than markedly impaired due to his depression and pain disorder." (AR at 109). In his opinion, the ALJ refered to the findings of Dr. Martin but noted that they were part of Plaintiff's prior disability application, which would not be reopened.  Given that Dr. Martin lacked confidence in his own findings and insinuated possible malingering as the reason for the testing outcome, the ALJ did not err in failing to include these non-exertional limitations in the hypothetical. (AR at 20).

Regarding the cardiac condition, no doctor found any limitations. Palpitations were noted at various places in Plaintiff's charts, but no limitations were attached to these observations. The ALJ did not err in failing to include palpitation in the hypothetical.

The limitations contained in the ALJ's hypothetical question to the vocational expert was supported by the opinions of Dr. Jandial, Dr. Pojunas and Dr. Leoni.  No more was required. The hypothetical need not incorporate every restriction word-for-word. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002;)*Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).  Moreover, an ALJ is not required to discuss all evidence

9

presented, but only must explain why significant, probative evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1089).

The ALJ's hypothetical was amply supported by the opinions of the examining physicians, as well as by the non-examining State Agency physicians.   The hypothetical posed by the ALJ therefore properly reflected Plaintiff's residual functioning capacity and it was not error for the ALJ to rely on the conclusions of the vocational expert.

**B.   The Record was Adequately Developed**

Plaintiff asserts that the ALJ failed to fully and fairly develop the record and carefully explore all relevant facts.   First, Plaintiff contends that the ALJ should have ordered an updated mental consultative examination to clarify whether Plaintiff has a severe medical impairment.   Second, Plaintiff asserts that the ALJ should have obtained evidence from a medical expert to clarify if Plaintiff's mental impairments meet or equal Listing 12.05. Third, Plaintiff asserts that the ALJ should have obtained evidence from a medical expert to clarify whether Plaintiff's cardiac condition and obesity equal Listing 4.05. In support of these contentions, Plaintiff cites *Key v. Heckler*, 754 F.2d 1545 (9th Cir. 1985) and *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982). Plaintiff also cites 20 C.F.R. § 404.1519a(b)(4) for the proposition that the ALJ was required to order further consultative examinations in this case.

An ALJ's duty to develop the record is triggered only when the evidence is ambiguous or the record inadequate for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The requirement for additional information (contacting a treating physician, ordering a consultative examination, etc.) is "triggered only when the evidence from the treating medical source is inadequate" to make a

10

1   determination or decision as to whether the claimant is disabled. *Thomas*

2   *v. Barnhart,* 278 F.3d 947 (9th Cir. 2002). In social security cases, the

3   administrative law judge (ALJ) has special duty to develop the record

4   fully and fairly and to ensure that claimant's interests are considered,

5   even when claimant is represented by counsel. *Massanari*, 276 F.3d at

6   459. *See also* Social Security Act, § 1 et seq., as amended, 42 U.S.C.A.

7   § 301 et seq.

8       Here, the record before the ALJ was neither ambiguous nor

9   inadequate to allow for proper evaluation of the evidence.  The two

10  cases cited by Plaintiff generally stand for the proposition that

11  administrative procedures "should be understandable to the layman

12  claimant. . . and not strict in tone and operation." *Heckler*, 754 F.2d

13  at 1551, *citing Richardson v. Perales*, 402 U.S. 389, 400, 401, 91 S.Ct.

14  1420, 1426, 1427, 28 L.Ed.2d 842 (1971). When a claimant appears at a

15  hearing without counsel, the ALJ must "scrupulously and conscientiously

16  probe into, inquire of, and explore for all the relevant facts. He must

17  be especially diligent in ensuring that favorable as well as unfavorable

18  facts and circumstances are elicited." *Heckler*, 754 F.2d at 1551

19  (internal citations omitted). In *Thompson v. Schweiker*, 665 F.2d 936,

20  939 (9th Cir. 1982) the Ninth Circuit found that the ALJ's failure to

21  pursue relevant avenues of inquiry, or to assist the claimant, who

22  appeared *pro se*, deprived Thompson of his right to an impartial decision

23  based upon an adequate record.

24      Plaintiff was represented by counsel in this case, and was free to

25  obtain and submit additional medical evidence as he chose. There is no

26  allegation that the ALJ inadequately explained the proceedings to

27  Plaintiff. The case law does not support Plaintiff's proposition that

28  given Plaintiff's failure to ever seek psychiatric treatment and,

1  consequently, a barren record regarding any mental impairment, the ALJ
2  ought to have ordered the production of this evidence. With regard to
3  the cardiac condition, the ALJ reviewed the substantial medical evidence
4  regarding Plaintiff's heart condition. No treating physician or other
5  physician found the Plaintiff limited by the palpitations. The ALJ found
6  that Plaintiff's cardiac condition was controlled by medication. The ALJ
7  said that "records by Dr. Chochinov report that as late as January 23,
8  2003, [Plainitff] had no problems healthwise, and . . . later noted he
9  was engaged in vocational rehabilitation for rebuliding computers." (AR
10 at 23).   The ALJ was not required to obtain further medical expert
11 testimony on this matter in order to make a decision.

12      With regard to 20 C.F.R. § 404.1519a(b)(4), Plaintiff inaccurately
13 summarizes the provision. Section 404.1519a(b)(4) states that "a
14 consultative examination *may* be purchased when the evidence as a whole,
15 both medical and nonmedical, is not sufficient to support a decision on
16 [a] claim. Other situations, including but not limited to the situations
17 listed below, will normally require a consultative examination: (4) A
18 conflict, inconsistency, ambiguity or insufficiency in the evidence must
19 be resolved, and [the ALJ is] unable to do so by recontacting [a]
20 medical source." Nothing in this language mandated action by the ALJ.
21 A claimant has no affirmative right to a consultative examination. *Reed*
22 *v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).  And, as previously
23 noted, the record in this case was not ambiguous, nor insufficient, and
24 therefore the ALJ's duty to further develop the evidence was not
25 triggered.

26 \\
27 \\
28 \\

1    **C.    The ALJ correctly assessed Plaintiff's Mental Impairments at**
2    **Step Two of the Sequential Evaluation Process under 20 C.F.R.**
3    **§ 1520(a).**

4    The ALJ found that Plaintiff did not suffer from a severe mental
5    impairment and therefore terminated the five-step sequential evaluation
6    process at the second step for Plaintiff's mental condition and
7    proceeded with the full five-step evaluation process only on Plaintiff's
8    physical impairments. (AR at 20, 24). Plaintiff objects to the finding
9    that his mental impairment is not severe.

10    At Step Two, the ALJ assesses whether the claimant has a medically
11    severe impairment or combination of impairments that significantly
12    limits his ability to do basic work activities. 20 C.F.R. §
13    404.1520(a)(4)(ii). The "ability to do basic work activities" is defined
14    as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §
15    404.1521(b), accord *Webb v. Barnhart*, No. 04-35445 (9th Cir. 2005). An
16    impairment is not severe if it is merely "a slight abnormality (or
17    combination of slight abnormalities) that has no more than a minimal
18    effect on the ability to do basic work activities." S.S.R. No. 96-3(p)
19    (1996). Step Two is thus "a de minimis screening device [used] to
20    dispose of groundless claims," *Smolen v. Charter*, 80 F.3d 1273, 1290
21    (9th Cir. 1996). An ALJ may find that a claimant lacks a medically
22    severe impairment only when his conclusion is "clearly established by
23    medical evidence." S.S.R. 85-28. If the ALJ finds that the claimant
24    lacks a medically severe impairment, the ALJ must find the claimant not
25    to be disabled. *Webb*, No. 04-35445 at 16785.

26    Here, the ALJ properly marshaled substantial evidence in support of
27    his finding of no severe mental impairment. The ALJ noted that
28    Plaintiff's treating physician, Dr. Wikholm, said that the depression

13

was "'mild' secondary to pain." (AR at 20). The ALJ further cites the absence of any regular or ongoing mental health treatment or any documentation of psychiatric hospitalizations and/or psychotropic medications. (AR at 20). An ALJ may consider the fact that Plaintiff's mental problems were not severe enough to motivate him to seek mental health treatment as evidence as the level of Plaintiff's distress. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), accord *Burch v. Barnhart* 400 F.3d 676, 683 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.") Also, Dr. Martin's mental health evaluation was submitted by Plaintiff in connection with a prior claim that the ALJ specifically held that he was not reopening. (AR at 20). Plaintiff testified to worsening mental symptoms of loss of concentration and memory, but also that he was presently in a vocational rehabilitation course in computer repair and that he was responsible for the care of his two school-age grandchildren on a daily basis. Collectively, this evidence is sufficient to uphold the ALJ's determination that Plaintiff lacks a medically severe mental impairment.

**D.    The ALJ Did Err in Failing to Obtain, Inquire About, or Identify and Resolve a Conflict Between the Dictionary of Occupational Titles ("DOT"), the Medical-Vocational Guidelines ["Grids"] and the Vocational Expert Testimony**

Plaintiff alleges that the ALJ violated the requirements of Social Security Ruling ("SSR") 00-4p in failing to inquire into possible conflicts between the Vocational Expert's testimony and the DOT job descriptions. Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

Social Security Rule 00-4p establishes that an ALJ has an affirmative responsibility to ask about any possible conflict between

14

1   the Vocational Expert's testimony and information provided in the DOT.

2   If there is a conflict, the ALJ must obtain a reasonable explanation for

3   the apparent conflict."[1]   Also, per SSR 00-4p, the "regulatory

4   definitions of exertional levels are controlling," even if they conflict

5   with the Vocational Expert's assessment.

6       As previously mentioned, in response to the ALJ's sole hypothetical

7   question, the Vocational Expert testified that Plaintiff could not

8   perform his past relevant work, but could perform other work. (AR at

9   438-40.) However, the record is unclear as to what precise other work

10  the Vocational Expert testified that Plaintiff could perform. The

11  Vocational Expert first testified that Plaintiff could, "using the

12  transferable skills of driving . . . be like a van driver, which would

13  – for example, if he was delivering or with the people who drives the

14  vans for the hotels, pick people up at the airport, that sort of thing."

15

16      [1]   SSR 00-4p holds as follows: "Neither the DOT nor the VE or VS
17  evidence automatically "trumps" when there is a conflict. The
    adjudicator must resolve the conflict by determining if the explanation
18  given by the VE or VS is reasonable and provides a basis for relying on
    the VE or VS testimony rather than on the DOT information. . .
19      Although there may be a reason for classifying the exertional
20  demands of an occupation (as generally performed) differently than the
    DOT (e.g., based on other reliable occupational information), the
21  regulatory definitions of exertional levels are controlling. For
    example, if all available evidence (including VE testimony) establishes
22  that the exertional demands of an occupation meet the regulatory
    definition of "medium" work (20 CFR 404.1567 and 416.967), the
23  adjudicator may not rely on VE testimony that the occupation is "light"
    work. . .
24      Occupational evidence provided by a VE or VS generally should be
    consistent with the occupational information supplied by the DOT. When
25  there is an apparent unresolved conflict between VE or VS evidence and
    the DOT, the adjudicator must elicit a reasonable explanation for the
26  conflict before relying on the VE or VS evidence to support a
    determination or decision about whether the claimant is disabled. At the
27  hearings level, as part of the adjudicator's duty to fully develop the
    record, the adjudicator will inquire, on the record, as to whether or
28  not there is such consistency."

1    However, moments later, the Vocational Expert withdrew this
2    assessment and stated, "Actually, that wouldn't be a good example
3    because they carry luggage. But maybe one of those small school buses,
4    that sort of thing where they are escorting people. Not necessarily
5    delivering or working but they're getting in and out when they get to
6    their destination to, you know, invite people in, that sort of thing, so
7    – a light truck driver, van driver type person."

8    Based on this testimony, the ALJ listed "Van Driver, semiskilled"
9    as one of the light jobs that remained available to Plaintiff.  The
10   Vocational Expert found that this job involved the transferability of
11   skills, namely those acquired in Plaintiff's past work as a commercial
12   truck driver.  However, there are no van or truck driver positions
13   listed in the DOT that fall within the light work category, and the
14   ALJ's hypothetical limited the Plaintiff to light work. The DOT lists
15   two code sections that refer to "van driver," specifically 905.663-018,
16   which requires a very heavy level of exertion, and 913.663-018, which
17   requires a medium level of exertion. The DOT also lists a few "truck
18   driver" positions, but none of these are classified as light either.
19   *See, e.g.* "Truck Driver, Light" 906.683-022, which requires a medium
20   level of exertion. (Light refers to the weight of the truck).  The ALJ
21   specifically limited the Plaintiff to light work in his hypothetical,
22   and therefore these positions are not available to the Plaintiff, even
23   though cited by the Vocational Expert. As noted above, the "regulatory
24   definitions of exertional levels are controlling," even if they conflict
25   with the Vocational Expert's assessment. *See* SSR 00-4p.

26   The ALJ and the Vocational Expert also cite two unskilled jobs that
27   Plaintiff could perform. These jobs were "hand picker" and "ticket
28   seller." (AR at 23).  However, since these are unskilled professions,

16

transferability of skills is not applicable, and based on Plaintiff's age (56 at the hearing), education (12th grade), and lack of transferable skills, Grid Rule 202.06 would direct a finding of disability.[2]

In his decision, the ALJ concluded that Grid Rule 202.07 directed a finding of "not disabled" because the Plaintiff had the skilled or semi-skilled transferable skill of commercial driving. Notwithstanding the highly questionable designation of commercial driving as a transferable skill[3], 20 CFR 404.202(c) directs that, where the transferable skill cannot be applied to the light-exertional level jobs available to Plaintiff, a finding of disabled is mandated. *See also, Cooper v. Sullivan*, 880 F.2d 1152 (9th Cir., 1989) (establishing that a finding of disability directed by application of the Grids must be accepted by the Secretary).  Consequently, the ALJ erred in finding the Plaintiff not disabled, because Grid Rule 202.06 direct a finding of disability for a person, like Plaintiff, of advanced age, with a 12th

---

[2]  *See* 20 CFR 404.202(c): "[F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, . . . the limitations in vocational adaptability represented by functional limitation to list work warrant a finding of disabled."

[3]  *See* SSR 82-41(a) Definition of skill: "A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.
Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs."

grade education, and no relevant transferable skills.

## VI.   CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgement is granted and the action shall be remanded for an award of benefits.[4]

DATED: January 18, 2006               */s/ Marc L. Goldman*

                                      _____
                                      MARC L. GOLDMAN
                                      United States Magistrate Judge

---

[4]     Because the Court is remanding on issue number 4, it is unnecessary to reach Plaintiff's other two claims, that the ALJ improperly rejected the findings of Plaintiff's treating physician and improperly discredited d the testimony of Plaintiff.